

**SEALED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

2010 JAN 14  A 11: 09

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERCIA, *ex rel.* | § | |
| | § | |
| Dr. Raymond G. Good, and | § | **Filed in Camera and** |
| Mrs. Darlene J. Good | § | **Under Seal Pursuant to** |
| | § | **31 U.S.C. §3730(B)(2)** |
| | § | |
| Plaintiff and Relators, | § | |
| | § | |
| v. | § | **Civil Action No. SA08CA0894XR** |
| | § | |
| | § | |
| Marci Taylor, | § | |
| Treehouse Behavioral Services, PLLC, | § | |
| Treehouse Pediatric Center, PLLC, | § | |
| The Autism Clinic of Texas (aka "Treehouse | § | |
| Day Program"), and | § | **Do not enter on PACER/ECF** |
| Timothy Taylor | § | **Do not serve Defendants** |
| | § | **Do not place in Press Box** |
| | § | |
| Defendants. | § | |

## RELATORS FIRST AMENDED COMPLAINT

Relators Dr. Raymond G. Good and Mrs. Darlene J. Good, on behalf of the United States

of America and its agency, the TRICARE Management Activity, hereby file, as permitted by

FED. RULE OF CIV. PROC. 15(a) and before the Defendants have filed a responsive pleading and

while this action remains under seal, this their first amended *qui tam* complaint under the FALSE

CLAIMS ACT against Defendants and add Timothy Taylor as a defendant, and allege as follows:

### I.
### INTRODUCTION

1.01    Dr. and Mrs. Good bring this *qui tam* action against Marci Taylor, the businesses owned

and controlled by Marci Taylor, and Timothy Taylor, all of whom, individually and in

conspiracy, defrauded the United States, and, in so doing, denied the child of Dr. and Mrs. Good

the health care that he desperately needed and to which he was entitled. The Goods' only child,

Paul, suffers from Autism Spectrum Disorder. In 2002, Congress funded a TRICARE benefit to

help children with special needs such as Paul. The modality known as Applied Behavior

Analysis (ABA) has been proven to help children such as Paul when it is delivered by a trained,

certified, and credentialed therapist. While Marci Taylor held herself out as a certified therapist,

she rarely, if ever, provided ABA therapy to Paul. At most, she conducted an initial screening of

Paul and then pushed him off to untrained, non-certified employees, all the while billing

TRICARE as though she provided him therapy. The Goods were not the only victims of this

scheme; the Defendants similarly deceived dozens of military families who were relying on

Defendants for their children's treatment. In so doing, the Defendants defrauded TRICARE and

denied dozens of children from military families of the healthcare they needed and to which they

were entitled. Many of the fathers of these children were deployed to Iraq in support of

Operation Iraqi Freedom. While these service members were deployed in Iraq, the Defendants

were making millions of dollars at taxpayer expense.

## II.
## JURISDICTION AND VENUE

2.01    This *qui tam* action is brought under the FALSE CLAIMS ACT, as amended, 31 U.S.C.

§§3729-3733.

2.02    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1341, 1345;

31 U.S.C. §3732(a); and its general equity jurisdiction.

2.03    Venue is proper in the Western District of Texas under 28 U.S.C. §1391(b) and 31 U.S.C.

§3732(a) as this is the place where the false claims arose.

2.04    Personal jurisdiction is proper for Defendant Marci Taylor as she is a person who resides, transacts business, and has committed acts in violation of 31 U.S.C. §3729 in this district.

2.05    Personal jurisdiction is proper for Defendant Timothy Taylor as he is a person who resides, transacts business, and has committed acts in violation of 31 U.S.C. §3729 in this district.

2.06    This action is not based upon any public disclosure, as that term is defined in 31 U.S.C. §3730(e)(4)(A).  Even if it were, Dr. and Mrs. Good are nonetheless an original source, as that term is defined in 31 U.S.C. §3730(e)(4)(B).

### III.
### PROCEDURE

3.01    This Amended Complaint has been filed under seal as required by 31 U.S.C. §3730(b)(2).

3.02    A copy of this complaint has been served upon the United States Attorney General and the United States Attorney for the Western District of Texas.

3.03    All conditions precedent required by 31 U.S.C. §3730(b)(2) have occurred.

### IV.
### THE PARTIES

4.01    Relator Dr. Raymond G. Good is an individual who was residing in Bexar County, Texas when the Complaint was originally filed but now currently resides in the State of Oregon.

4.02    Relator Mrs. Darlene J. Good is an individual who was residing in Bexar County, Texas when the Complaint was originally filed but now currently resides in the State of Oregon

4.03    Relators Dr. and Mrs. Good bring this *qui tam* action on behalf of the United States.

4.04    Plaintiff is the United States, which funds and administers the TRICARE Management Activity ("TRICARE").  (TRICARE was formerly the Office of Civilian Health and Medical

Program of the Uniformed Services ("CHAMPUS"); TRICARE and CHAMPUS are used interchangeably.)

4.05    Defendant Marci Taylor resides at 89 Sistine (The Renaissance Neighborhood), San Antonio, Bexar County, Texas 78258. This defendant is sued in her individual capacity and in her capacity as the owner, agent, and officer of the entities set out below.

4.06    Defendant Timothy Taylor resides at 89 Sistine (The Renaissance Neighborhood), San Antonio, Bexar County, Texas 78258. This defendant is sued in his individual capacity and in his capacity as the owner, agent, and officer of the entities set out below

4.07    Defendant Treehouse Behavioral Services, PLLC is a Texas professional limited liability company chartered, owned, operated, and solely controlled by Taylor. Marci Taylor is its registered agent. Defendant Treehouse Behavioral Services, PLLC is currently doing business at 10515 Gulfdale, San Antonio, Texas 78216.

4.08    Defendant Treehouse Pediatric Center, PLLC is a Texas professional limited liability company chartered, owned, operated, and solely controlled by Taylor. Marci Taylor is its registered agent. Defendant Treehouse Pediatric Center, PLLC is currently doing business at 10515 Gulfdale, San Antonio, Texas 78216.

4.09    Defendant The Autism Clinic of Texas is a Texas nonprofit corporation chartered, operated, and controlled by Taylor. Defendant The Autism Clinic of Texas is currently doing business at 10515 Gulfdale, San Antonio, Texas 78216. Marci Taylor has reported to the Internal Revenue Service that this entity qualifies as an exempt organization under section 501(c)(3) of the INTERNAL REVENUE CODE. At various times, Taylor has operated Defendant The Autism Clinic of Texas under the assumed name "Treehouse Day Program." (On occasion,

The Autism Clinic is held out as the "Treehouse School.")  This entity's registered agent is Timothy Taylor, the husband of Defendant Marci Taylor.  Timothy Taylor is also a director of this entity.  Defendant Marci Taylor signed and filed this entity's federal tax returns.  Carolyn Taylor, who is the mother-in-law of Defendant Marci Taylor and the mother of Timothy Taylor, maintains this entity's books.

4.10   Whenever in this complaint it is alleged that Defendants did any act or omission, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## V.
## THE TRICARE PROGRAM

5.01   TRICARE is a federally funded medical insurance program for military personnel, retirees, their spouses, and unmarried dependent children under the age of twenty-two, administered by TRICARE Management Activity, pursuant to 10 U.S.C. §§1071-1107. TRICARE operates in accordance with policies and procedures set forth in Department of Defense TRICARE Regulation 6010.8-R, published in 32 C.F.R. Part 199.  Particular aspects of the program are implemented through TRICARE Policy, Operations, Reimbursement, and Systems Manuals.  *See* < www.http://manuals.tricare.osd.mil/ > (last visited Oct. 21, 2008).

5.02   TRICARE defines a "provider" as a person, business, or institution that provides or gives health care.  All TRICARE providers must be authorized/certified by TRICARE.  Marci Taylor is the TRICARE provider that is the subject of this *qui tam* action.  Individually and through the

entities that they owned and controlled, Marci and Timothy Taylor knowingly submitted or caused to be submitted false or fraudulent claims to TRICARE.

5.03    Subject to applicable definitions, conditions, limitations, and exclusions found in 32 C.F.R. Part 199, some medical services are reimbursable under the TRICARE Program.   The provider seeking reimbursement has an obligation to provide services that are:

a.    furnished at the appropriate level and only when and to the extent medically necessary. 32 C.F.R. §199.9(b);

b.    of a quality that meets professionally recognized standards of health care. *Id.*; and

c.    supported by adequate medical documentation as may reasonably be required to evidence the medical necessity and quality of services provided, as well as the appropriate level of care. *Id.*

5.04    The provider providing services and seeking TRICARE reimbursement has a further obligation to not:

a.    submit claims for non-covered costs or non-chargeable services disguised as covered. 32 C.F.R. §199.9(c)(2);

b.    submit claims that involve flagrant and persistent overutilization of services without proper regard for results, the patient's ailments, condition, or medical needs. 32 C.F.R. §199.9(c)(5); and

c.    submit claims that are false or fictitious, or include or are supported by any written statement that asserts a material fact that is false or fictitious, or include or are supported by any written statement that omits a material fact that the provider had a duty to include and the claim is false or fictitious as a result of such omission. 32 C.F.R. §199.2.

5.05    TRICARE contracts with private insurance companies to help administer the TRICARE program, particularly in processing and paying claims.   Such organizations are known as TRICARE contractors.   At all times relevant to this complaint, the contractor for TRICARE claims in Texas was Humana Military Health Care Services ("Humana").

5.06    Humana received and approved claims submitted for medical reimbursement by the Defendants.   Payment was made to Marci Taylor and the Defendants for claims submitted by them because those claims appeared to be eligible for reimbursement under the TRICARE Program.   As shown below, however, the Defendants submitted, or caused to be submitted, false claims and records to Humana and TRICARE, which resulted in Marci and Timothy Taylor being paid millions of dollars by the United States.

## VI.
## THE ECHO BENEFIT UNDER THE TRICARE PROGRAM FOR CHILDREN WITH SPECIAL NEEDS

### The ECHO benefit

6.01    The TRICARE basic program is prohibited by statute from covering special education. 10 U.S.C. §1079(a)(9).   In 2002, Congress carved out an exception to this prohibition by creating and funding the "ECHO" benefit.   The TRICARE Extended Care Health Option (ECHO) provides funding for eligible beneficiaries who qualify based on specific mental or physical disabilities (such as Autism Spectrum Disorder) and offers an integrated set of services and supplies not available through the basic TRICARE program.[1]   The ECHO benefit allows reimbursement (a maximum of $2,500 per month, per child)[2] for special medical benefits (listed

---

[1] The ECHO benefit replaced the Program for Persons with Disabilities on September 1, 2005, as authorized by section 701(b) of the National Defense Authorization Act for Fiscal Year 2002, Public Law 107-107, which revised subsections (d), (e), and (f) of 10 U.S.C. §1079, and is implemented under 32 C.F.R. Part 199.5.
[2] 10 U.S.C. §1079(f)(2)(A).

in 32 C.F.R. Part 199.5) for service members who have children with qualifying special needs. Dr. and Mrs. Good's son, Paul, is a child who qualified for the ECHO benefit.

***TRICARE will only reimburse a provider for ABA therapy provided by a certified BACB therapist in a "one-on-one" setting—TRICARE reimbursement is not authorized for ABA therapy provided by a non-BACB certified therapist or ABA therapy by a certified BACB therapist in a group setting***

6.02    Under 10 USC §1079(e) "[e]xtended benefits for eligible dependents . . . may include . . . training, rehabilitation, special education, and assistive devices."  Applied Behavioral Analysis (ABA) therapy is a special education service that can be cost-shared under the TRICARE ECHO benefit.  32 C.F.R. Part 199.5.  ABA therapy is a behavioral intervention that shapes behaviors and teaches skills.

6.03    TRICARE established an explicit reimbursement rule for ABA therapy.  Specifically, TRICARE providers seeking reimbursement for ABA therapy must be certified by the Behavior Analyst Certification Board (BACB).  *See* TRICARE POLICY MANUAL 6010.54-M, chapter 9, Section 17-1, ¶E (Aug. 1, 2002) ("TRICARE-authorized providers are those that . . . are certified by the Behavioral Analyst Certification Board (BACB) as either a Board-Certified Behavioral Analyst or a Board-Certified Associate Behavioral Analyst."); TRICARE POLICY MANUAL 6010.54-M, Aug. 1, 2002, Chapter 9, Section 9.1, ¶II(C) ("The educational modality known as 'Applied Behavioral Analysis (ABA)' is included as a benefit under this issuance when provided by a TRICARE-authorized provider.  TRICARE will not pay for ABA therapy provided by individuals who are not TRICARE-authorized providers (see Chapter 9, Section 17.1).").  The Behavior Analyst Certification Board (BACB)[3] is the only credentialing entity that TRICARE currently recognizes for delivery of ABA therapy to a TRICARE beneficiary.  *Id.*  Additionally,

---

[3]  *See* < www.http://bacb.com > (last visited October 1, 2008).

TRICARE only authorizes reimbursement for ABA therapy when it is provided in a "one-on-one" setting by BACB-certified therapist.  *Id.*  Thus, under these reimbursement rules and regulations, TRICARE cannot pay for ABA services provided by a non-BACB certified therapist.  TRICARE cannot pay for ABA group therapy—the therapy must be "one-on-one" with the patient.  TRICARE cannot pay for ABA services in the situation where a BACB-certified therapist supervises a non-BACB certified therapist who provides ABA therapy to a child.  This means that ABA services rendered in tiered service models, in which a BACB-certified provider supervises some number of non-certified trainees who provide the actual "hands-on" services, do not qualify for reimbursement.  The business model in which a supervising or lead therapist develops a behavioral treatment plan for a child and then provides indirect supervision of the hands-on ABA technicians or instructors who engage in the one-on-one treatment with the child was not authorized by TRICARE during the period relevant to this action.  The Defendants were running an impermissible tiered model where ABA services were provided by non-BACB certified therapists.  Given that scheme, the Defendants submitted claims to Humana and TRICARE for reimbursement as though an individual certified provider delivered the "one-on-one" ABA therapy to a TRICARE beneficiary when that was actually not true.

## VII.
## OVERVIEW OF HOW DEFENDANTS DEFRAUDED THE TRICARE PROGRAM

7.01   Marci Taylor has been an authorized provider in the TRICARE program since 2005.  While Taylor is a BACB-certified therapist, she rarely, if ever, provided ABA therapy to a TRICARE patient.  At most, she would conduct an initial screening.  Thereafter, Taylor assigned one of her dozen or more therapists that she employed—who were not BACB-certified—to

provide ABA therapy to the patient. The Defendants submitted fabricated, altered, false claims, and/or and medical records to Humana and TRICARE seeking compensation. Defendants made these records appear as though the patient received ABA therapy by a certified BACB therapist. Such claims were false or fraudulent because the claims and associated records contained false information (*e.g.*, stating that a BACB-therapist provided ABA therapy when that was not the case). Such claims were also false because they failed to comply with TRICARE's ABA reimbursement rule. At other times, the Defendants would submit claims to TRICARE for services that were simply not rendered. In some situations, the Defendants submitted claims to TRICARE seeking reimbursement for ABA one-on-one therapy that was actually group therapy or merely preschool. Finally, the Defendants submitted claims to TRICARE for an hourly rate that was substantially higher than they charged non-TRICARE beneficiaries. Ultimately, TRICARE paid the Defendants for these false and fraudulent claims.

7.02 For each claim the Defendants submitted to TRICARE for reimbursement, Marci Taylor certified on a CMS Form 1500 that the services she provided "were medically necessary, and provided under the correct supervisory relationship, and that falsification may result in fine and imprisonment." Taylor also certified and acknowledge that if she "knowingly file[ed] a statement of claim containing any misrepresentation or any false, incomplete or misleading information [she] may be guilty of a criminal act punishable under law and may be subject to civil penalties." In the alternative to CMS Form 1500, when Taylor filed electronic claims, she certified on her original Electronic Data Interchange (EDI) Provider Trading Partner Agreement as follows: "The provider agrees: that anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information relating to that claim that is required

pursuant to this Agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law."  Taylor also certified on the EDI Agreement as follows: "The provider agrees: That it will submit claims that are accurate, complete, and truthful."

7.03    Taylor was aware of, or should have been aware of, the conditions for repayment under the TRICARE program.

**VIII**
**DEFENDANTS' FRAUD TOOK ADVANTAGE OF DOZENS OF MILITARY FAMILIES TO BILK THE TRICARE PROGRAM**

8.01    <u>Paul Good</u>:    Paul Good is the only child of Dr. and Mrs. Good.  As is the case with hundreds of military dependents, Paul suffers from Autistic Spectrum Disorder, a condition that adversely affects social interaction and the ability to communicate ideas and feelings and the establishment of relationships with others.  The Goods applied for and were accepted into the ECHO program.

8.02    In December 2005, Dr. and Mrs. Good took Paul to be evaluated by the Treehouse Pediatric Center, PLLC.  Marci Taylor made the initial evaluation of Paul and recommended a treatment plan.  After her initial consultation, Taylor did not treat or provide therapy to Paul. Rather, she performed a bait and switch; despite her representation that she would be providing Paul's therapy, she actually handed off Paul's care off subordinate employees who were not certified BACB therapists.  On only a handful of occasions did Paul receive therapy from a BACB certified therapist; for the majority of therapy sessions, Taylor left Paul with a non-BACB certified therapist.  For almost all of the military children, Taylor assigned non-BACB certified therapists to provide their treatment.  During this period in which Taylor was defrauding TRICARE and not providing Paul the medical services he needed and to which he was entitled,

Dr. Good was deployed in a combat zone in Iraq in support of Operation Iraqi Freedom.  Upon discovering that the Defendants cheated Paul out of the treatment to which he was entitled and needed, Dr. and Mrs. Good removed Paul from Treehouse in February 2008.  Paul would have benefitted from proper ABA therapy.  Paul was entitled to receive proper therapy.  Through using false claims related to Paul, Taylor received thousands of dollars from the United States.

8.03   The other TRICARE Families:       the Defendants exploited Dozens of other TRICARE families in the same or similar way they exploited the Good family, as a means of bilking the TRICARE program.  For each month for the past three years, approximately thirty to fifty TRICARE families have enrolled a child at Treehouse, where their entire $2,500.00 monthly ECHO benefit was soaked up by the Defendants in the same or similar way she soaked up the Goods' $2,500.00 monthly ECHO benefit.  Some of these families have multiple children enrolled at Treehouse, and each child was allotted the $2,500.00 monthly ECHO benefit.  To protect the identity of these families and their children, they are identified by code:

| **Army** | **Air Force** | **Navy** |
|---|---|---|
|  |  |  |



## IX.
## SPECIFIC INSTANCES OF DEFENDANTS' FALSE CLAIMS
### The Defendants Billed TRICARE for Services Not Actually Rendered

---

### The Defendants Billed TRICARE for ABA Therapy Provided by a Non-certified BACB Therapist

9.01    <u>The Defendants billed TRICARE for ABA therapy provided to a TRICARE beneficiary by a non-BACB certified therapist</u>:   In   January   2006   Marci   Taylor   assigned   Veronica Vandertulip to be Paul's ABA therapist.  Vandertulip, however, was not BACB certified from January through December 2006.  The Defendants nevertheless submitted claims to Humana as though Paul received ABA therapy by a BACB-certified therapist when that was not the case.

9.02    From January through December 2006, TRICARE paid the Defendants approximately $22,612.00  based  upon  the  false  claims  and  records  they  submitted  to  Humana  seeking reimbursement for ABA therapy provided to Paul at Treehouse.  The claims were false because Taylor sought reimbursement for ABA therapy provided by Vandertulip, who was not BACB certified at the time.  TRICARE authorized reimbursement of $100.00 per hour for each hour of ABA therapy done by a BACB-certified therapist.  The chart below shows some, but not all, sessions in which the Defendants submitted a false claim to TRICARE for ABA therapy provided by Vandertulip to Paul.  The chart below is just a sample of the dates on which the

Defendants submitted false claims to TRICARE.   TRICARE reimbursed the Defendants for these claims, which were false or fraudulent.  Based upon information and belief, the Defendants submitted many more false claims to TRICARE not listed in the chart below.

| | | | |
|---|---|---|---|
| January 4, 2006<br>January 18, 2006<br>January 23, 2006<br>January 25, 2006 | February 1, 2006<br>February 8, 2006<br>February 10, 2006<br>February 20, 2006<br>February 22, 2006<br>February 27, 2006 | March 1, 2006<br>March 6, 2006<br>March 8, 2006<br>March 10, 2006<br>March 13, 2006<br>March 15, 2006<br>March 20, 2006<br>March 22, 2006<br>March 24, 2006<br>March 27, 2006<br>March 29, 2006<br>March 31, 2006 | April 3, 2006<br>April 7, 2006<br>April 10, 2006<br>April 12, 2006<br>April 17, 2006<br>April 19, 2006 |
| May 1, 2006<br>May 8, 2006<br>May 15, 2006<br>May 16, 2006<br>May 17, 2006<br>May 18, 2006<br>May 22, 2006<br>May 25, 2006 | June 1, 2006<br>June 5, 2006<br>June 6, 2006<br>June 7, 2006<br>June 8, 2006<br>June 12, 2006<br>June 13, 2006<br>June 15, 2006<br>June 19, 2006<br>June 21, 2006<br>June 27, 2006<br>June 29, 2006 | July 5, 2006<br>July 7, 2006<br>July 12, 2006<br>July 13, 2006<br>July 19, 2006<br>July 21, 2006<br>July 24, 2006<br>July 31, 2006 | August 2, 2006<br>August 8, 2006<br>August 10, 2006<br>August 14, 2006<br>August 17, 2006<br>August 18, 2006<br>August 22, 2006<br>August 23, 2006<br>August 24, 2006<br>August 30, 2006 |
| September 6, 2006<br>September 7, 2006<br>September 8, 2006<br>September 13, 2006<br>September 14, 2006<br>September 27, 2006<br>September 28, 2006 | October 2, 2006<br>October 3, 2006<br>October 5, 2006<br>October 6, 2006<br>October 10, 2006<br>October 12, 2006<br>October 13, 2006<br>October 16, 2006<br>October 17, 2006<br>October 23, 2006<br>October 24, 2006 | November 1, 2006<br>November 2, 2006<br>November 3, 2006<br>November 6, 2006<br>November 7, 2006<br>November 13, 2006<br>November 16, 2006<br>November 20, 2006<br>November 21, 2006<br>November 27, 2006<br>November 29, 2006 | |

| | October 26, 2006<br>October 30, 2006 | November 30, 2006 | |
|---|---|---|---|

9.03     The Defendants' acts of submitting claims to TRICARE for ABA therapy provided by a

non-BACB certified therapist were in violation of TRICARE's reimbursement rules and

regulations.  Specifically, the Defendants' acts violated TRICARE Policy Manual 6010.54-M,

chapter 9, Section 17-1, ¶E (Aug. 1, 2002) ("TRICARE-authorized providers are those that . . .

are certified by the Behavioral Analyst Certification Board (BACB) as either a Board-Certified

Behavioral Analyst or a Board-Certified Associate Behavioral Analyst.") and TRICARE Policy

Manual 6010.54-M, Aug. 1, 2002, Chapter 9, Section 9.1, ¶II(C) (same).  The Defendants' acts

also violate these parts of 32 C.F.R. 199.9, which set our TRICARE's rules regarding fraud and

abuse of the TRICARE program:

> 32 C.F.R. §199.9(b)(3) ("A pattern of claims for services which are not medically necessary or, if medically necessary, not to the extent rendered.");

> 32 C.F.R. §199.9(b)(4) ("Care of inferior quality.  For example, consistently furnishing medical or mental health services that do not meet accepted standards of care.");

> 32 C.F.R. §199.9(c)(2) ("Billing or submitting a CHAMPUS claim for costs for noncovered or non-chargeable services, supplies, or equipment disguised as covered items.");

> 32 C.F.R. §199.9(c)(5) ("Billings or CHAMPUS claims which involve flagrant and persistent overutilization of services without proper regard for results, the patient's ailments, condition, medical needs . . . .");

> 32 C.F.R. §199.9(c)(6) ("Misrepresentations of dates, frequency, duration, or description of services rendered, or of the identity of the recipient of the services or the individual who rendered the services.");

> 32   C.F.R.   §199.9(c)(7) ("Submitting   falsified   or   altered

CHAMPUS claims or medical or mental health patient records which misrepresent the type, frequency, or duration of services or supplies or misrepresent the name(s) of the individual(s) who provided the services or supplies.");

32 C.F.R. §199.9(c)(9) ("Misrepresentation by a provider of his or her credentials or concealing information or business practices which bear on the provider's qualifications for authorized CHAMPUS provider status. For example, a provider representing that he or she has a qualifying doctorate in clinical psychology when the degree is not from a regionally accredited university.");

32 C.F.R. §199.9(c)(10) ("Reciprocal billing. Billing or claiming services which were furnished by another provider or furnished by the billing provider in a capacity other than as billed or claimed. For example, practices such as the following: (i) One provider performing services for another provider and the latter bills as though he had actually performed the services (e.g., a weekend fill-in); (ii) providing service as an institutional employee and billing as a professional provider for the services; (iii) billing for professional services when the services were provided by another individual who was an institutional employee; (iv) billing for professional services at a higher provider profile than would be paid for the person actually furnishing the services, (for example, bills reflecting that an M.D. or Ph.D. performed the services when services were actually furnished by a licensed social worker, psychiatric nurse, or marriage and family counselor); or (v) an authorized provider billing for services which were actually furnished by an unauthorized or sanctioned provider."); and

32 CFR §199.1(c)(13) ("Agreements or arrangements between the supplier and recipient (recipient could be either a provider or beneficiary, including the parent, guardian, or other representative of the beneficiary) that result in billings or claims which include unnecessary costs or charges to CHAMPUS.")

9.04   Based upon information and belief, the Defendants violated the above regulations as it relates to all of the TRICARE beneficiaries listed above.

# X.
## SPECIFIC INSTANCES OF DEFENDANTS' FALSE CLAIMS
**(The Defendants Billed TRICARE at Higher Rates for ABA Therapy Than they Billed Non-TRICARE Patients, in violation of 32 C.F.R. §§199.9(b)(7) & (c)(3))**

10.01  The Defendants billed TRICARE for ABA therapy at $100.00 per hour.  However, the Defendants billed Dr. and Mrs. Good only $65.00 per hour for ABA therapy for Paul.  The Defendants billed non-TRICARE families and TRICARE families that had exhausted their $2,500.00 monthly TRICARE ECHO benefit at rates ranging from $40.00 to $85.00 per hour.

10.02.  Such disparate billing rates practice violates TRICARE's reimbursement rules and regulations.  Specifically, the Defendants' acts violate:

> 32 CFR §199.9(b)(2) (Improper billing practices.  Examples include, charging CHAMPUS beneficiaries rates for services and supplies that are in excess of those charges routinely charged by the provider to the general public, commercial health insurance carriers, or other federal health benefit entitlement programs for the same or similar services. (This includes dual fee schedules— one for CHAMPUS beneficiaries and one for other patients or third-party payers.  This also includes billing other third-party payers the same as CHAMPUS is billed but accepting less than the billed amount as reimbursement.  However, a formal discount arrangement such as through a preferred provider organization, may not necessarily constitute an improper billing practice.");

> 32 CFR §199.9(b)(7) (Billing substantially in excess of customary or reasonable charges unless it is determined by OCHAMPUS that the excess charges are justified by unusual circumstances or medical complications requiring additional time, effort, or expense in localities when it is accepted medical practice to make an extra charge in such cases.); and

> 32 CFR §199.9(c)(3) (Breach of a provider participation agreement which results in the beneficiary (including parent, guardian, or other representative) being billed for amounts which exceed the CHAMPUS-determined allowable charge or cost.).

10.03   The Defendants billed TRICARE for ABA therapy provided to Paul at $100.00 per hour up to the point where they exhausted Paul's $2,500.00 monthly ECHO benefit.  After reaching that threshold, the Defendants provided ABA therapy to Paul at $65.00 per hour, which was for the same treatment.   Such disparate billing practices for the same treatment violate the TRICARE regulations set out above.

10.04   Based upon information and belief, the Defendants engaged in this practice with all the TRICARE families whose monthly ECHO benefit had been exhausted.   Moreover, based upon information and belief, the Defendants billed the general public for ABA therapy at a rate lower than they billed TRICARE beneficiaries.

### XI.
### SPECIFIC INSTANCES OF DEFENDANTS' FALSE CLAIMS
### (The Defendants Submitted Claims to TRICARE for School Tuition, Play Groups, Summer Groups, and "RDI Therapy" as Though They Provided "One-on-One" ABA Therapy)

11.01   The Defendants obtained TRICARE reimbursement for ABA therapy that was actually school tuition:

a.      In August 2007, Marci Taylor induced Dr. and Mrs. Good to enroll Paul into the Treehouse School (a.k.a. The Treehouse Day Program).  The Treehouse School is separate from the Treehouse Pediatrics Center, where the children receive therapy.  The Treehouse School does not provide ABA therapy, or if does, never by a BACB-certified therapist or in a one-on-one setting.  For the entire school day, students are instructed as a group by two teachers who have no ABA training or were not BACB-certified therapists.  For children enrolled full-time at the school, the Defendants charged $1,950.00 in tuition per month.   In some instances, the Defendants sought reimbursement from TRICARE for this schooling by submitting a false claim that billed TRICARE for 19.5 hours of ABA therapy at $100/hour.   Such claim was false

because the Defendants billed TRICARE for ABA therapy that was actually just school tuition, which is not reimbursable. Paul Good, for example, was enrolled on a part-time basis at the Treehouse School. The Defendants billed $20 per hour for Paul's tuition at the Treehouse School. The Defendants would bundle Paul's school tuition into units of nine hours (for the week) and then submit a false claim to TRICARE seeking reimbursement on the basis that they allegedly provided Paul 1.8 hours of ABA therapy at $100.00 per hour for a total of $180.00. Such claims were false because the Defendants did not provide ABA therapy to Paul but rather billed TRICARE for Paul's school tuition, which was not reimbursable by TRICARE.

b.     In addition to Paul, the Defendants engaged in a similar pattern with approximately fifteen other TRICARE families. Those TRICARE beneficiaries are listed below:



These TRICARE families had their $2,500.00 TRICARE ECHO monthly benefit reduced because the Defendants billed TRICARE for ABA therapy that was actually school tuition. Such claims were false because the Defendants did not provide reimbursable therapy to these TRICARE beneficiaries but rather billed TRICARE for school tuition, which was not reimbursable by TRICARE. Based upon information and belief, the Defendants continue this practice.

11.02   The Defendants obtained TRICARE reimbursement for ABA one-on-one therapy that was actually playgroups and summer school:

a.      Throughout the year the Defendants offer "integrated play groups."  These are nothing more than social groups in which autistic children have the opportunity to interact with and play with their peers.  These sessions are not one-on-one ABA therapy.  Taylor, nonetheless, billed TRICARE for these playgroups.  Taylor billed TRICARE for ABA therapy that was actually school tuition.  Such claims were false because Taylor did not provide reimbursable ABA therapy to these TRICARE beneficiaries but rather billed TRICARE for play groups, which was not reimbursable by TRICARE.

b.      Every summer Taylor offered a summer play group program, consisting of three to five children.  Taylor billed TRICARE for ABA therapy that was actually tuition for these summer groups.  Such claims were false because Taylor did not provide reimbursable ABA therapy to these TRICARE beneficiaries but rather billed TRICARE for summer groups, which was not reimbursable by TRICARE.

11.03   The Defendants obtained TRICARE reimbursement for occupational therapy that was actually "Relationship Development Intervention" ("RDI") Therapy:

In limited situations, TRICARE will reimburses occupational therapy ("OT") provided by board-certified occupational therapists.  In August 2007, however, the Defendants began offering "Relationship Development Intervention" ("RDI") therapy.  It is important to note, however, that the Defendants gave RDI therapy to parents, not children.  RDI is not reimbursable occupational therapy.  Moreover, TRICARE excludes from reimbursement any attempt to separately charge for instruction to the parents.  *See* TRICARE Policy Manual 6010.54-M, Chapter 7, Section 18.3, paragraph IV.A.3.  For those TRICARE families receiving ABA therapy and OT or only OT, the Defendants billed TRICARE for the RDI training as reimbursable OT hours.  As it relates to Dr. and Mrs. Good, the Defendants billed TRICARE

$400.00 per month for OT therapy allegedly provided to Paul but what actually was RDI therapy provided to Dr. and Mrs. Good, which is not reimbursable. Based upon information and belief, the Defendants engaged in this practice with multiple TRICARE families and she continues this practice.

11.04  The Defendants' acts were in violation of TRICARE's reimbursement rules and regulations. Specifically, the Defendants' acts violate:

> 32 CFR 199.9(c)(2) (Billing or submitting a CHAMPUS claim for costs for noncovered or nonchargeable services, supplies, or equipment disguised as covered items.);

> 32 CFR 199.9(c)(6) (Misrepresentations of dates, frequency, duration, or description of services rendered, or of the identity of the recipient of the services or the individual who rendered the services.);

> 32 CFR 199.9(c)(13) (Agreements or arrangements between the supplier and recipient (recipient could be either a provider or beneficiary, including the parent, guardian, or other representative of the beneficiary) that result in billings or claims which include unnecessary costs or charges to CHAMPUS.).

11.05  Based upon information and belief, the Defendants engaged in this practice with all the TRICARE beneficiaries

## XII.
## SPECIFIC INSTANCES OF DEFENDANTS' FALSE CLAIMS
### (Marci Taylor Altered Records to Obtain Payment Paid by TRICARE)

12.01  In January 2006 Humana sent the Defendants and Marci Taylor an inquiry about problems with her billing practices. As a result, Taylor manufactured medical notes, altered medical records, and made false records in an effort to make it appear as though she was the actual therapist who provided ABA therapy to the TRICARE beneficiaries. Taylor would commonly use notes from different sessions and re-date them, and would sign herself as having

been involved in each session when that was not the case.  Taylor and the Defendants used these false records to obtain reimbursement from TRICARE.

12.02  Marci Taylor's acts of were in violation of TRICARE's reimbursement rules and regulations.  Specifically, Taylor's acts are *presumed* to be fraudulent under TRICARE's rule and regulations:

> 32 CFR §199.1(c)(6) (Misrepresentations of dates, frequency, duration, or description of services rendered, or of the identity of the recipient of the services or the individual who rendered the services.");
>
> 32 CFR §199.1(c)(7) (Submitting falsified or altered CHAMPUS claims or medical or mental health patient records which misrepresent the type, frequency, or duration of services or supplies or misrepresent the name(s) of the individual(s) who provided the services or supplies.); and/or
>
> 32 CFR §199.1(c)(12) (Arrangements by providers with employees, independent contractors, suppliers, or others which appear to be designed primarily to overcharge the CHAMPUS through various means (such as commissions, fee-splitting, and kickbacks) used to divert or conceal improper or unnecessary costs or profits.).

12.03  Based upon information and belief, Marci Taylor engaged in this practice with all the TRICARE beneficiaries.

## XIII.
### COUNT 1
### Presenting False Claims to the Government
### Violation of Section 3729(a)(1) of the FALSE CLAIMS ACT

13.01  Relators reallege and incorporate herein the preceding paragraphs.

13.02  With respect to the TRICARE beneficiaries identified above, Defendants knowingly (as defined by 31 U.S.C. §3729(b)) presented, or caused to be presented, to an officer, agent,

employee of the United States Government, or a member of the Armed Forces of the United States, false or fraudulent claims for payment or approval by TRICARE.

13.03   Each claim submitted by Defendants for each TRCIARE beneficiary identified above is a separate false or fraudulent claim.

13.04   Defendants knowingly presented, or caused to be presented, these claims with actual knowledge of the false information, in deliberate ignorance of the truth of the false information, or in reckless disregard of the truth or falsity of the information.

13.05   As a result of these false or fraudulent claims submitted or caused to be submitted by Defendants, the United States, through the TRICARE program, paid these claims, resulting in damage to the United States, in an amount to be determined at trial but not less than $1,500,000.00.  As Defendants' violations of the FALSE CLAIMS ACT are ongoing, the United States continues to be damaged by Defendants.  This amount is to be trebled.  31 U.S.C. §3729(a).  Defendants are also liable for a penalty of $11,000.00 for each separate false or fraudulent claim.  *Id.*; 28 C.F.R. §85.3(a) (2000) (increasing the penalty to $11,000.00); *see also* the DEBT COLLECTION IMPROVEMENT ACT of 1996, Pub. L. No. 104-134, Sec. 31001(s), 110 Stat. 1321-73.

13.06   Relators are entitled to the statutory percentage of the amount received by the United States, reasonable expenses that have been incurred, attorney's fees, and costs.  31 U.S.C. §3730(d)(1).

## XIV.
## COUNT 2
### Knowingly Presenting a False or Fraudulent Record
### Violation of Section 3729(a)(2) of the FALSE CLAIMS ACT

14.01   Relators reallege and incorporate herein the preceding paragraphs.

14.02  With respect to the TRICARE beneficiaries identified above, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

14.03  The United States was unaware of the foregoing circumstances and conduct of Defendants and in reliance of said false and fraudulent records authorized payments to be made to Defendants and made such payments and as a result has been damaged.

14.04  Such conduct violates the FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(2).

14.05  As a result, the United States, through the TRICARE program, paid these claims, resulting in damage to the United States, in an amount to be determined at trial but not less than $1,500,000.00.  As Defendants' violations of the FALSE CLAIMS ACT are ongoing, the United States continues to be damaged by Defendants.  This amount is to be trebled.  31 U.S.C. §3729(a).  Defendants are also liable for a penalty of $11,000.00 for each separate false or fraudulent claim.  *Id.*

14.06  Relators are entitled to the statutory percentage of the amount received by the United States, reasonable expenses that have been incurred, attorney's fees, and costs.  31 U.S.C. §3730(d)(1).

**XV.**
**COUNT 3**
**Conspiracy Among Defendants to Present a False or Fraudulent Record**
**Violation of Section 3729(a)(3) of the FALSE CLAIMS ACT**

15.01  Relators reallege and incorporate herein the preceding paragraphs.

15.02  The following conspired and had an agreement to defraud TRICARE by submitting false or fraudulent claims: Defendant Marci Taylor, Defendant Timothy Taylor, Defendant Treehouse Behavioral Services, PLLC, Defendant Treehouse Pediatric Center, PLLC, Defendant The

Autism Clinic of Texas, along with unnamed coconspirators.  Defendants had the specific intent to defraud and/or submit false claims to TRICARE.  Marci Taylor performed an overt act to affect the object of the conspiracy.  Specifically, she forged, altered, fabricated, or falsified medical records and claims forms, and submitted false information to TRICARE.  Timothy Taylor performed an overt act to affect the object of the conspiracy.  Specifically, he forged, altered, fabricated, or falsified medical records and claims forms, and submitted false information to TRICARE.  Defendant Treehouse Behavioral Services, PLLC, Defendant Treehouse Pediatric Center, PLLC, Defendant The Autism Clinic of Texas, acting through its officers, agents, and employees performed an overt act to affect the object of the conspiracy. Specifically, they forged, altered, fabricated, or falsified medical records and claims forms, and submitted false information to TRICARE.  Finally, Marci Taylor and Timothy Taylor solicited military service members and their dependents and their employees and agents to submit false information to TRICARE and to also make a false certification and oath.

15.03   As a result of this conspiracy, the United States, through the TRICARE program, paid these claims, resulting in damage to the United States, in an amount to be determined at trial but not less than $1,500,000.00.  As Defendants' violations of the FALSE CLAIMS ACT are ongoing, the United States continues to be damaged by Defendants.  This amount is to be trebled.  31 U.S.C. §3729(a).  Defendants are also liable for a penalty of $11,000.00 for each separate false or fraudulent claim.  *Id.*

15.04   Relators are entitled to the statutory percentage of the amount received by the United States, reasonable expenses that have been incurred, attorney's fees, and costs.  31 U.S.C. §3730(d)(1).

## XVI.
## COUNT 4
**Knowingly Making, Using, or Causing to be Made or Used, a False Record or Statement to Conceal, Avoid, or Decrease an Obligation to Pay or Transmit Money to the Government**
**Violation of Section 3729(a)(7) of the FALSE CLAIMS ACT**

16.01   Relators reallege and incorporate herein the preceding paragraphs.

16.02   With respect to the TRICARE beneficiaries identified above, Defendants knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money to the Government.

16.03   Such conduct violates the FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(7).

16.04   Consequently, the United States has been damaged, in an amount to be determined at trial but not less than $1,500,000.00.   As Defendants' violations of the FALSE CLAIMS ACT are ongoing, the United States continues to be damaged by Defendants.   This amount is to be trebled.   31 U.S.C. §3729(a).   Defendants are also liable for a penalty of $11,000.00 for each separate false or fraudulent claim.   *Id.*

14.06   Relators are entitled to the statutory percentage of the amount received by the United States, reasonable expenses that have been incurred, attorney's fees, and costs.   31 U.S.C. §3730(d)(1).


## XVII.
## RELIEF SOUGHT

**The Following relief is sought**:

17.01   On Count 1 (presenting or causing presentment of false claims), judgment against Defendants for treble damages in the amount of $5,000,000, or as further established at trial plus a penalty of $11,000 per false claim as established at trial.

17.02   On Count 2 (making or using a fraudulent record to get a false claim paid by the Government), judgment against Defendants for treble damages in the amount of $5,000,000, or as further established at trial plus a penalty of $11,000 per false claim as established at trial.

17.03   On Count 3 (Conspiracy to Present a False Claim), judgment against Defendants for treble damages in the amount of $5,000,000, or as further established at trial plus a penalty of $11,000 per false claim as established at trial.

17.04   Disgorgement by Defendants of all interests, earnings, salaries, and profits obtained by Defendants by use of fraudulently obtained TRICARE money.

17.05   Imposition of a constructive trust on all funds or property that can be demonstrated to be proceeds made by Defendants through reimbursements obtained by fraud or false claims, as equitable property of Plaintiff and Relators.

17.06   Pre-judgment interest.

17.06   Relators are entitled to the statutory percentage of the amount received by the United States, reasonable expenses that have been incurred, attorney's fees, and costs.   31 U.S.C. §3730(d)(1).

17.07   And for all other relief to which Plaintiff and Relators may be entitled.


## XVIII.
## JURY TRIAL

18.01   Relators request trial by jury in this action.

Respectfully submitted,

By: _____
Dan L. Hargrove
State Bar No. 00790822

HARGROVE & REA, P.C.
HISTORIC ONE TEN BROADWAY
110 Broadway, Suite 550
San Antonio, Texas 78205
(210) 223-9700 [TELEPHONE]
(210) 223-9708 [FACSIMILE]
dh@hargroverea.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2010, a copy of the above and foregoing was served pursuant to Federal Rule of Civil Procedure 4(i) by sending a copy of the summons and of the Complaint to the following:

The Honorable Eric Holder
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

Mr. Johnny Sutton
United States Attorney
Attention: Civil Process Clerk
United States Attorney's Office
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

By: _____
    Dan L. Hargrove
    State Bar No. 00790822